1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 10, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CATALINA A.,[1]

                Plaintiff,

      v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                Defendant.

No.   4:20-CV-5124-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

      Before the Court are the parties' cross summary-judgment motions.[2]
Plaintiff Catalina A. appeals the denial of benefits by the Administrative Law
Judge (ALJ). She alleges the ALJ erred by 1) improperly considering Steven
Haney, M.D.'s opinion, 2) improperly determining that the impairments did not
meet or equal a listing, 3) discounting her symptom reports, and 4) improperly

---

[1] Plaintiff identifies herself as a female. The Court refers to Plaintiff as a female
and by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 17 & 18.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

assessing her residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 17, and grants the Commissioner's Motion for Summary Judgment, ECF No. 18.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[7] If the claimant does, the disability-evaluation proceeds to step three.

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[8] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[9] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[10] If the claimant is able to perform prior work, benefits are denied.[11] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[12] If so, benefits are denied. If not, benefits are granted.[13]

---

[8] *Id.* § 404.1520(a)(4)(iii).

[9] *Id.* § 404.1520(d).

[10] *Id.* § 404.1520(a)(4)(iv).

[11] *Id.*

[12] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[13] 20 C.F.R. § 404.1520(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1
2
3

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[14] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[15]

4
5

## II.    Factual and Procedural Summary

6
7
8

Plaintiff filed a Title II application, alleging a disability onset date of September 1, 2013.[16] Her claim was denied initially and upon reconsideration.[17] A video administrative hearing was held before Administrative Law Judge Stewart Stallings.[18]

9

In denying Plaintiff's disability claim, the ALJ made the following findings:

10
11
12

- Step one: Plaintiff had not engaged in substantial gainful activity since September 1, 2013, the alleged onset date, through her date last insured of March 31, 2016.

13
14
15

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, bipolar disorder, anxiety/panic disorder,

16

---

17
18

[14] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

19

[15] *Id.*

20

[16] AR 172-76. Plaintiff also filed a prior disability application, which was denied. AR 165-71 & 94-66.

21

[17] AR 99-105 & 107-113.

22
23

[18] AR 42-68.

posttraumatic stress disorder (PTSD), personality disorder, and

gender identity/dysphoria disorder.

- Step three: Plaintiff did not have an impairment or combination of

    impairments that met or medically equaled the severity of one of the

    listed impairments.

- RFC: Plaintiff had the RFC to perform light work and:

    > can stand or walk up to six hour[s], and sit up to six hours,
    > of an eight-hour workday with normal breaks. [She] cannot
    > climb ladders, ropes, or scaffolds, and is precluded from
    > exposure to dangerous or moving machinery. [She] requires
    > employment at a low-stress position (defined as
    > without production pace or sales quotas) and is precluded
    > from security work. [She] can handle brief interaction with
    > the public and coworkers, and occasional contact with
    > supervisors.

- Step four: Plaintiff was not capable of performing past relevant work;

    and

- Step five: considering Plaintiff's RFC, age, education, and work

    history, Plaintiff could perform work that existed in significant

    numbers in the national economy, such as small products assembler,

    marker, and electronics worker.[19]

When assessing the medical-opinion evidence, the ALJ gave:

- partial weight to the opinion of Steven Haney, M.D., and

---

[19] AR 13-31.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- no weight to the examining opinions of Diane Fligstein, Ph.D., and Thomas Clifford, who opined there was insufficient evidence to establish a severe impairment.[20]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence.[21]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[23] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[24] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25] Moreover, because it is

---

[20] AR  23-24.

[21] AR 22-23.

[22] AR 1-6.

[23] 42 U.S.C. § 405(g).

[24] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[25] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[26] The Court considers the entire record.[27]

Further, the Court may not reverse an ALJ decision due to a harmless error.[28] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[29] The party appealing the ALJ's decision generally bears the burden of establishing harm.[30]

### IV.    Analysis

### A.    Medical Opinions: Plaintiff fails to establish error.

Plaintiff argues the ALJ failed to fully consider Dr. Haney's reviewing opinion. Dr. Haney reviewed the medical record as part of Plaintiff's prior 2015

---

[26] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[27] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[28] *Molina*, 674 F.3d at 1111.

[29] *Id.* at 1115 (quotation and citation omitted).

[30] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

disability application.[31] As to Paragraph B criteria, Dr. Haney opined that Plaintiff was mildly restricted in her activities of daily living and moderately limited in her abilities to maintain social functioning and concentration, persistence, or pace. As to Paragraph C criteria, Dr. Haney opined the evidence did not satisfy the criteria requirements. As to Plaintiff's ability to sustain concentration and persistence, Dr. Haney found:

> [Plaintiff] retains the ability to carry out more than one or two step instructions. Her depression and anxiety with accompanying poor stress tolerance would interfere with her ability to maintain regular attendance and to persist through a normal workweek. However, these impairments are not so severe that they would prevent her from being able to sustain more than one or two step instructions in a reasonably consistent manner.[32]

As to Plaintiff's social interaction limitations, Dr. Haney found that Plaintiff "is socially isolative. Effective communication occurs in small group or comfortable settings. Supervisory feedback should be given on a 1:1 basis. [She] can interact, but should avoid busy public spaces with fre[q]uent intrusions."[33]

The ALJ gave partial weight to Dr. Haney's opinion. The ALJ gave partial weight to Dr. Haney's opinion not because the ALJ found Plaintiff was less limited than Dr. Haney opined but because the ALJ found that Plaintiff was more limited than Dr. Haney opined. First, the ALJ agreed with Dr. Haney's opinion that

---

[31] AR 71-74.

[32] AR 74.

[33] AR 74.

interactive limitations were appropriate—the RFC limits Plaintiff to brief interactions with the public and coworkers and occasional contact with supervisors.[34] Second, in contrast to Dr. Haney's opinion that Plaintiff could sustain more than one or two step instructions in a reasonably consistent manner notwithstanding her depression and anxiety with accompanying poor stress tolerance, the ALJ found that Plaintiff's anxiety and poor stress tolerance required limiting Plaintiff to a low-stress position and no security work (as well as interactive limitations).[35]

Plaintiff argues the ALJ failed to appreciate that Dr. Haney opined that Plaintiff's depression and anxiety with accompanying poor stress tolerance interfered with her ability to maintain regular attendance and persist through a normal workweek. This argument fails. Dr. Haney opined that, notwithstanding Plaintiff's depression, anxiety, and poor stress tolerance, Plaintiff could perform and sustain *more than* one or two-step instructions in a reasonably consistent manner through a normal workday and workweek. The ALJ rationally incorporated Dr. Haney's opinion, to the extent it was supported by the evidence, in the RFC by limiting Plaintiff to light work, limiting exposure to dangerous or moving machinery, requiring a low-stress position, disallowing security work, and

---

[34] AR 21, 23, & 74-75.

[35] *Id.*

1

2

restricting interactions with the public and coworkers to brief interactions and

contact with supervisors to occasional.[36]

3

4

**B.      Step Three (Listings): Plaintiff fails to establish error.**

5

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments,

6

singly or in combination, did not meet or medically equal Listings 12.04, 12.06,

12.08, or 12.15.

7

8

At step three, the ALJ must determine if a claimant's impairments meet or

9

equal a listed impairment.[37] The ALJ must support his listings finding with more

10

than a boilerplate finding that a listing was not satisfied. Yet, the finding may be

11

supported by the ALJ's "articulation of the reason(s) why the individual is or is not

12

disabled at a later step in the sequential evaluation process" so long as the Court

13

can meaningfully review the basis for the step-three decision.[38] To meet a listed

14

15

16

---

17

[36] AR 21. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006  (9th Cir.

18

2015) (recognizing the ALJ has responsibility to craft an RFC that includes

limitations supported by the evidence).

19

[37] 20 C.F.R. § 404.1520(a)(4)(iii).

20

21

[38] Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *4; *see also Lewis v.*

*Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-

22

01 (9th Cir. 1990).

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

impairment, the claimant has the burden of establishing that she meets each characteristic of a listed impairment.[39]

Listing 12.04 disorders, which include bipolar disorders, are "characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning."[40] Symptoms and signs can include "feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal."[41] The impairment must also meet Paragraphs B and C criteria.[42] Paragraph B criteria—the areas of mental functioning used in a work setting—are met if the impairment results in a marked limitation in at least two of the following areas or an extreme limitation in one of the following areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.[43] Paragraph C criteria are met if the mental disorder is serious and persistent, i.e.,

---

[39] 20 C.F.R. § 404.1525(d); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

[40] 20 C.F.R. Pt. 404, Subpt. P, App 1 at 12.00(A)(3)(a) (Listing 12.04).

[41] *Id.*

[42] *Id.* at 12.00(A)(2).

[43] *Id.* at 12.00(A)(2)(b).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

there is a medically documented history of the existence of the disorder over a period of at least two years and the claimant relies on ongoing medical treatment to diminish the symptoms and signs of the mental disorder, and despite the ongoing treatment the claimant has only achieved marginal adjustment, i.e., her adaptation to the requirements of daily life is fragile.[44]

Listing 12.06 includes anxiety and obsessive-compulsive disorders, which are characterized by excessive anxiety, worry, oppression, and fear, or by avoidance of feelings, thoughts, activities, places, or people.[45] Symptoms and signs can include restlessness, difficulty concentrating, hypervigilance, muscle tension, sleep disturbance, fatigue, panic attacks, obsessions and compulsions, constant thoughts and fears about safety, and frequent physical complaints.[46] Paragraphs B and C criteria must also be met.[47]

Listing 12.08 includes personality and impulse-control disorders that are characterized by enduring, inflexible, maladaptive, and pervasive patterns of behavior.[48] Symptoms and signs include, but are not limited to, social detachment,

---

[44] *Id.* at 12.00(A)(2)(c) & 12.00(G).

[45] *Id.* at 12.00(B)(5)(a) (Listing 12.06).

[46] *Id.*

[47] *Id.* at 12.00(A)(2).

[48] *Id.* at 12.00(B)(7) (Listing 12.08).

discomfort, or avoidance; difficulty making independent decisions; and patterns of distrust, suspiciousness, and odd beliefs.[49] Paragraph B criteria must also be met.[50]

Listing 12.15 includes trauma and stressor-related disorders.[51] Symptoms and signs include, but are not limited to, distressing memories, dreams, and flashbacks related to the trauma or stressor; avoidant behavior; diminished interest or participation in significant activities; persistent negative emotional states or inability to experience positive emotions; anxiety; irritability; aggression; difficulty concentrating; and sleep disturbance.[52] Paragraphs B and C criteria must also be met.[53]

Here, while recognizing that Plaintiff's bipolar symptoms waxed and waned, the ALJ found Plaintiff did not satisfy Paragraph B or C criteria.[54] Plaintiff argues the ALJ's determination was internally inconsistent because he described serious deficits in functioning but then concluded that Plaintiff was only moderately limited in the Paragraph B criteria. This argument is unpersuasive. As discussed

---

[49] *Id.*

[50] *Id.* at 12.00(A)(2).

[51] *Id.* at 12.00(B)(11)(b) (Listing 12.15).

[52] *Id.* at 12.00(b)(11)(a).

[53] *Id.* at 12.00(A)(2).

[54] AR 21.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

below, the ALJ's listings findings were supported by substantial evidence and meaningfully explained either in the listings paragraph or by the entire decision.[55]

As to the ALJ's finding that Plaintiff's ability to understand, remember, or apply information was only mildly limited, the ALJ cited to numerous supporting medical records. These medical records are a fair representation of Plaintiff's mental health over the longitudinal record, which reflected that notwithstanding an impacted mood and affect, Plaintiff's memory and understanding were usually normal.[56]

As to the ALJ's finding that Plaintiff's ability to interact with others was moderately limited, the ALJ recognized that Plaintiff self-isolates and has shown mood disturbances including depression, sadness, flat affect, anxiousness, and irritability. The ALJ then found that Plaintiff's mood—and ability to interact with others—improved with hormone therapy.[57] The ALJ's finding that Plaintiff's ability

---

[55] *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (requiring the "subordinate factual foundations on which the [ALJ's] ultimate factual conclusions" were based to be explained).

[56] AR 20 (citing, e.g., AR 273, 295, 524, 530, 569, & 574-75).

[57] AR 20 (citing, e.g., AR 290, 304, 367, 374, 524, 568, 574, 666, & 731).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

to interact with others was moderately limited is a rational finding supported by substantial evidence.[58]

As to the ALJ's finding that Plaintiff's ability to concentrate, persist, or maintain pace was moderately limited, the ALJ highlighted that Plaintiff had shown normal concentration and attention at many treatment visits.[59] The ALJ's moderate-limitation finding in this regard was rational and supported by substantial evidence.

Finally, the ALJ found that Plaintiff's ability to adapt or manage herself was moderately limitation because she endorsed problems handling stress and changes to routine, had impulsive spending habits, and demonstrated limited insight and judgment at multiple treatment visits.[60] The ALJ's analysis in this regard was brief, however, the Court reviews this finding considering the ALJ's entire findings and discussion.[61] The ALJ found that, in addition to managing herself, Plaintiff was able to care for her children, prepare meals, handle financial affairs, drive herself and family members, and use public transportation. The ALJ's moderate-

---

[58] In making this determination, the Court gave less consideration to the notes in the medical records pertaining solely to Plaintiff's physical conditions.

[59] AR 21 (citing, e.g., AR 295, 562, 569, 575, 577, 581, 587, 590, & 596).

[60] AR 21.

[61] AR 22-23; SSR 17-2p; *Lewin*, 654 F.2d at 635.

limitation finding as to adaption/management is a rational finding supported by substantial evidence.[62]

As to the Paragraph C criteria, Plaintiff failed to cite to evidence to support the criteria. Plaintiff failed to establish that, with ongoing medical treatment, her adaptation to the requirements of daily life is fragile.

The ALJ's step-three findings are rational and supported by substantial evidence.

## C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[63] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific,

---

[62] *See, e.g.*, AR 294-96 (fair eye contact, pleasant, and cooperative); AR 289-92 (good eye contact, pleasant, and cooperative); AR 322 (cooperative); AR 639-42 (appropriate dress/grooming, cooperative, and good eye contact); & AR 598-99 (appropriate dress/grooming, cooperative, and good eye contact).

[63] *Molina*, 674 F.3d at 1112.

clear and convincing reasons' for the rejection."[64] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not supported by the evidence, including Plaintiff's lack of motivation to work, her level of activity, and the objective and observational medical evidence.[65]

First, the ALJ found that Plaintiff's lack of employment was primarily related to her lack of motivation as was reflected in her poor work history before her alleged disability onset date.[66] Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's claim that she is unable to work.[67] Here, the ALJ noted that Plaintiff's earnings records, showed only substantial-gainful-activity earnings for one year, which was six years before the alleged disability onset date. For a claimant who was 28-years-old at the alleged disability onset date, the ALJ rationally found that Plaintiff had a poor work history indicating a lack of motivation to work.

_____

[64] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[65] AR 22-23.

[66] AR 22.

[67] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); 20 C.F.R. § 404.1529 (work record can be considered in assessing reported symptoms).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Second, the ALJ discounted Plaintiff's symptom reports because her level of activity was minimally limited, the activities could not be reconciled with the considerable severity alleged, and she engaged in activities similar to activities performed in a variety of occupations."[68] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[69] The ALJ highlighted that Plaintiff provided childcare for children, ensured the children attended school, provided pet care, was independent in activities of self-care (although she had difficulty being motivated to complete activities), prepared simple meals, performed housework (with some encouragement), handled financial matters, drove herself and her family, rode a bicycle, used public transportation, shopped in stores, and went out to eat.[70] The ALJ rationally found that Plaintiff engaged in a wide range of activities; however, the ALJ failed to meaningfully explain why Plaintiff's assertion that her anxiety and worry impact her ability to persist and sustain "public" activities was inconsistent with the noted activities. Nonetheless, the ALJ largely accepted Plaintiff's symptom reports as to difficulties interacting with others by limiting Plaintiff to occasional contact with supervisors and brief interaction with the public

---

[68] AR 24.

[69] *Molina*, 674 F.3d at 1113.

[70] AR 200-02, 622, & 732.

and coworkers.[71] And Plaintiff fails to explain why her activities are inconsistent with activities required by the identified jobs of small products assembler, marker, and electronics worker. Plaintiff fails to establish that the ALJ consequentially erred in this regard. Even if the ALJ erred in this regard, the ALJ offered other clear and convincing reasons supported by substantial evidence to discount Plaintiff's symptom reports.

Finally, the ALJ found that Plaintiff's physical and mental symptoms were not supported by the objective and observational record. Symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[72] However, objective medical evidence is a relevant factor in considering the severity of the reported symptoms.[73] "Objective medical evidence" means signs, laboratory findings, or both.[74] In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or

---

[71] AR 21.

[72] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[73] *Id.*

[74] 20 C.F.R. § 404.1502(f).

perception, and must also be shown by observable facts that can be medically described and evaluated.[75]

Here, in contrast to Plaintiff's reported pain in her knees and shoulders, the ALJ found the physical examinations revealed normal gait, station, range of motion, and strength.[76] The ALJ's discounting of Plaintiff's reported physical symptoms was supported by substantial evidence and was a clear and convincing reason to discount these reported symptoms.

As to Plaintiff's mental health, the ALJ highlighted that multiple treatment visits showed minimal or mild findings while others revealed more severe limitations.[77] The ALJ acknowledged that bipolar disorder presents with waxing and waning symptoms and found that Plaintiff's normal findings were not isolated but instead represented a consistent overall pattern of moderate mental-health limitations.[78] Plaintiff argues the ALJ failed to cite to the most severe treatment notes, including those related to Plaintiff's mental-health hospitalization. Yet, an

---

[75] *Id*. § 404.1502(g); *see also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[76] AR 23 (citing, e.g., AR 333, 342, 387, 524, 542, 618, & 627).

[77] AR 23.

[78] *Id*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ALJ need not cite to every piece of evidence.[79] The Court finds the ALJ appropriately considered the longitudinal medical record, which included records revealing that Plaintiff's mental health symptoms waxed and waned, and the ALJ's finding that the longitudinal objective and observational record did not support Plaintiff's disabling mental-health symptom reports is supported by substantial evidence.[80]

---

[79] *See, e.g., Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence" (quotation marks omitted)).

[80] *See, e.g.*, AR 363 (Apr. 2014: Plaintiff sought emergency treatment for rectal bleeding, dizziness, and anxiety. She was observed with anxiety and a normal neurological examination); AR 294-96 (Sept. 2014: fair eye contact, mildly depressed affect with some anxiety, speech coherent, pleasant, cooperative, orientated, memory intact, concentration adequate, and fair judgment/insight); AR 289-92 (Jan. 2015: inpatient treatment, good eye contact, mildly depressed with some anxiety, somewhat restricted affect though brightened up, pleasant, cooperative, insight/judgment fair, and not medically compromised); AR 322 (March 2015: cooperative, intermittent eye contact, normal speech, thought process linear, affect generally restricted but brightened up, insight/ judgment good, and intact orientation); AR 555-56 (Aug. 2015: poorly groomed, appropriately dressed, eye contact brief/minimal, anxious, fidgeting, and completed cognitive tasks except

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

In summary, Plaintiff fails to establish the ALJ consequentially erred by discounting her symptom reports.

**D.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical to the vocational expert and the RFC failed to consider Plaintiff's absenteeism, off-task, and unproductivity limitations. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."[81] Plaintiff's argument merely restates her earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's

---

for identifying treatment needs); AR 748 (Aug. 2016: fair grooming, anxious, affect generally blunted, intermittent eye contact, speech normal, thought process illogical, thought association linear, insight/judgment good, and orientation/attention intact); AR 639-42 (Nov. 2016: appropriate dress/grooming, cooperative, good eye contact, soft speech, sad/depressed mood with congruent affect, thought process logical, insight/judgment intact, and average fund of knowledge); & AR 598-99 (Aug. 2017: appropriate dress/grooming, cooperative, good eye contact, euthymic mood with congruent affect, thought process logical, no abnormal thought content, intact insight/judgment, intact memory, and average fund of knowledge).

[81] *Rounds*, 807 F.3d at 1006; *see Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

hypothetical and RFC properly accounted for the limitations supported by the record.

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of the Commissioner.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 10th day of May 2021.

          s/Edward F. Shea     .
          EDWARD F. SHEA
     Senior United States District Judge